UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Musa Hoxhaj, Abdou El Shbeiny, and Ricardo Cordero, | 21 Civ.     (  )(  ) |
| Plaintiffs, | |
| - against - | Complaint and Jury Demand |
| Michael Cetta, Inc., Michael Cetta and Steven Cetta, | |
| Defendants. | |

Plaintiffs, by their attorney, Michael G. O'Neill, allege as follows:

1.      This in an action for money damages resulting from defendants' systematic and intentional violation of the Fair Labor Standards Act ("FLSA"), the New York State Labor Law, the New York Labor Department Regulations with respect to the payment of tips and wages, their failure to provide notices to plaintiffs as required by the New York State Labor Law and New York Labor Department Regulations, and their violations of the New York City and New York State Human Rights Laws.

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) because defendants reside in the Southern District.

4.      Plaintiff Musa Hoxhaj is an individual and resides in the State of New York.

5.      Plaintiff Abdou El Shbeiny is an individual and resides in the State of New Jersey.

6.      Plaintiff Ricardo Cordero  is an individual and resides in the State of New York.

7.      Each plaintiff is over 50 years old.

8.      Michael Cetta, Inc. ("MCI") is a New York corporation with its principal place of business in the State of New York.

9.      Defendant Michael Cetta ("Cetta Sr.") is and at all relevant times was the Chief Executive Officer of defendant Michael Cetta, Inc. as well as the sole or controlling shareholder of MCI.

10.     Defendant Steven Cetta ("Cetta Jr.") is and at all relevant times was employed by MCI in an executive or managerial capacity.

11.     Defendant MCI owns and operates a restaurant (the "Restaurant") named "Sparks Steakhouse" located at 210 E. 46th Street, New York, New York.

12.     During all relevant times, Cetta Sr. made all executive decisions regarding the operation of the Restaurant and was the decision maker with respect to the salaries paid to plaintiffs and other employment decisions relating to plaintiffs.

13.     During all relevant times, Cetta Jr. was responsible for the day to day operations of the Restaurant.

14.     Cetta Sr. and Cetta Jr. have direct control of, and responsibility for, the employment practices of the Restaurant.

15.     Cetta Jr. was responsible for the scheduling of all the employees in the front of the Restaurant, meaning that part of the Restaurant which was open to customers..

16.     Until their terminations in about September, 2020, each plaintiff had been employed by MCI since before the year 2000.

17.     Until about December 10, 2014, plaintiffs had been employed in a quasi managerial role supervising waiters and generally being in charge of the front of the Restaurant.

18.     On or about December 10, 2014, nearly all the Restaurant's waiters walked out on strike as part of a labor dispute between the waiters and MCI.

19.     Beginning about December 10, 2014, defendants changed plaintiffs' job duties and required them to work as waiters and busboys.

20.     Since that date, plaintiffs have never been restored to their previous roles and have continued to work performing at various times the duties of waiter, busboy and sometimes non-managerial captain.

21.     Since about December 10, 2014, plaintiffs have worked solely in roles providing direct customer service.

22.     Since about December 10, 2014, plaintiffs have worked a schedule alternating between 5 and 6 days a week, meaning 11 work days every two weeks.

23.     Frequently, however, plaintiffs have been required to work 12 out of 14 days in order to cover for an employee out sick or on vacation or for some other such reason.

24.     Since about December 10, 2014, MCI failed to employ any system for keeping track of the hours worked by plaintiffs, except for a brief period of time in which they were required to punch in and punch out.

25.     Since about December, 2014, the typical work day for each plaintiff began at 3pm and ended between 11pm and midnight.

26.     Twice a week, however, each plaintiff was required to stay at the Restaurant until closing, which would be anywhere from between 1am and 2am.

27.     At times, they were required to stay even later, because Cetta Jr. was too intoxicated to leave the Restaurant.

28.     Accordingly, since about December 10, 2014, each plaintiff worked at least 46.5 hours in weeks he worked 5 days and at least 55 hours in weeks he work 6 days.

29.     Plaintiffs worked 6 day weeks approximately 70 percent of the time.

30.     During this time, plaintiffs were never informed what their hourly wage was.

31.     During the period plaintiffs were required to punch in and punch out, however, the paychecks issued to plaintiffs indicated that the salary paid to them was for 40 hours of work.

32.     Except for rare occasions, plaintiffs were not paid any overtime.

33.     Once in a while, usually after a plaintiff complained about not being paid overtime, there would be a small amount added to his check.  On these occasions, however, the checks never reflected the amount of overtime actually worked, nor did they indicate plaintiffs' hourly rate or how the overtime compensation was computed.

34.     Customers almost always left tips for the services provided by plaintiffs.

35.     Plaintiffs, however, were not paid any of the tips that customers left using

credit cards.

36.    From time to time, plaintiffs complained that they were not being paid enough and asked Cetta Sr. for a raise.

37.    In response, Cetta Sr. repeatedly told plaintiffs that they were worth $150,000 a year, but that they had nowhere to go because of their ages, meaning that if they left they would not be able to find a job somewhere else because they were too old.

38.    Cetta Sr. would tell plaintiffs that their next stop was "the old age home."

39.    Similar agist comments were made by Cetta Jr. throughout the relevant time period.

40.    Plaintiffs Hoxhaj and El Shbeiny are Muslim.

41.    During the relevant time period, plaintiffs Hoxhaj and El Shbeiny were treated differently from non-Muslims.

42.    For example, plaintiffs were entitled to a meal during their break, but the chef refused to warm up their meals, although he warmed the meals of the non-Muslims.

43.    Cetta Jr. made numerous racist remarks against Muslims, Arabs and others.

44.    On one occasion, Cetta Jr. asked plaintiff Hoxhaj if he knew what the capital of Pakistan was.  When Hoxhaj answered, Cetta Jr. corrected him by pronouncing Islamabad as "Islam is bad."

45.    Cetta Jr. made employees shave their mustaches, because he did not want them to "look like Arabs."

46.     These and other remarks by Cetta Jr. caused them to suffer emotional distress.  Cetta Jr. made no secret of the fact that he admired dictators, his office was cluttered with videos depicting the German Army in World War II and he frequently made a point of showing plaintiffs a large knife he stated was from Germany in World War II. Plaintiffs considered Cetta Jr. to be mentally unstable and feared that he might act out his racist impulses.

47.     During much of the relevant time period, there was an individual named Sebastian who was given free reign of the Restaurant by Cetta Jr.

48.     Although Sebastian's role in the Restaurant was never defined, he was a close friend of Cetta Jr. and Cetta Jr. allowed him to order employees around and generally treat the Restaurant as if he owned it.

49.     Sebastian frequently insulted plaintiffs about their ages and Hoxhaj and El Shbeiny with respect to their religions.

50.     When Sebastian saw Hoxhaj or El Shbeiny, he would often make comments about the "Arab stink."

51.     In mid March, 2020, when the Restaurant shut down due to the pandemic, plaintiffs were "furloughed" with the remainder of the Restaurant's employees.

52.     Since that time, the Restaurant has reopened and upon information and belief, most if not all the furloughed employees were recalled to work.

53.     Plaintiffs, however, were not recalled to work.

54.     When plaintiffs inquired why they were not returned to work, they were

simply told that they were not needed.

55.     Upon information and belief, plaintiffs have been replaced by younger employees.

**Claim One**

56.     Defendants failed to pay plaintiffs the overtime wages to which they were entitled under the FLSA.

57.     Defendants' violations of the FLSA, as described in this complaint have been willful and intentional.

58.     Because defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

59.     As a result of defendants' willful violations of the FLSA, plaintiffs have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 et seq.

60.     As a result of the unlawful acts of defendants, plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**Claim Two**

61.     Defendants have failed to pay plaintiffs the overtime wages to which they were entitled under the New York Labor Law and New York Labor Department Regulations.

62.     Defendants' violations of the New York Labor Law and New York Labor Department Regulations, as described in this complaint have been willful and intentional.

63.     As a result of defendants' willful violations of the New York State Labor Law and New York Labor Department Regulations, plaintiffs have suffered damages by being denied overtime wages in accordance with Article 19 of the New York State Labor Law and supporting regulations.

64.     As a result of the unlawful acts of defendants, plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of their unpaid minimum wages, unpaid overtime wages, together with prejudgment interest, attorneys' fees and costs.

**Claim Three**

65.     Defendants violated Section 196-d of the New York Labor Law by failing to pay plaintiffs the tips left by patrons for plaintiffs.

66.     As a result of defendants' violation of Section 196-d of the New York Labor Law, plaintiffs have suffered damages.

67.     As a result of defendants' violation of Section 196-d of the New York Labor Law, plaintiffs  are entitled to an award of damages to be determined at trial by jury, together with prejudgment interest, attorneys' fees and costs.

**Claim Four**

68.     Defendants failed to pay plaintiffs for their spread of hours as required by the

New York Labor Law and New York Labor Department Regulations.

## Claim Five

69.     Defendants failed to provide the notices required by New York Labor Law 198.1-b.

## Claim Six

70.     Defendants failed to provide the notices required by New York Labor Law 198.1-d.

## Claim Seven

71.     Defendants' decision not to to recall plaintiffs to work when the Restaurant reopened was based in whole or in part on plaintiffs' ages.

72.     In refusing to recall plaintiffs to work when the Restaurant reopened, defendants violated the New York City Human Rights Law.

73.     As a result of defendants' violation of the New York City Human Rights Law, plaintiffs have suffered damages.

## Claim Eight

74.     Defendants' decision not to to recall plaintiffs to work when the Restaurant reopened was based in whole or in part on plaintiffs' ages.

75.     In refusing to recall plaintiffs to work when the Restaurant reopened, defendants violated the New York State Human Rights Law.

76.     As a result of defendants' violation of the New York State Human Rights Law, plaintiffs have suffered damages.

**Claim Nine**

77.     Defendants treated plaintiffs Hoxhaj and El Shbeiny less well than other workers because of the religion of Hoxhaj and El Shbeiny, in violation of the New York City Human Rights Law.

WHEREFORE, plaintiffs pray for all available relief under law and equity, including but not limited to a money judgment for their damages, liquidated damages under the FLSA, the New York Labor Law and New York Labor Department Regulations, penalties and fines provided for under New York Labor Law sections 198.1-b and 198.1-d, punitive damages under the New York City Human Rights Law, attorneys fees, costs, prejudgment interest at the New York State statutory rate, and any and all relief, damages, costs of any nature whatsoever available to plaintiffs under any Federal or State law, whether such laws have specifically been identified herein, as a result of the events and transactions described herein, whether or not specifically prayed for.

Dated: New York, New York
       July 27, 2021

MICHAEL G. O'NEILL

_____
Attorney for Plaintiffs
30 Vesey Street, Third Floor

New York, New York 10007
(212) 581-0990

**JURY DEMAND**

Plaintiffs demand trial by jury in this action.

Dated: New York, New York
       July 27, 2021

                                        MICHAEL G. O'NEILL

                                        _____
                                        Attorney for Plaintiffs
                                        30 Vesey Street, Third Floor
                                        New York, New York 10007
                                        (212) 581-0990