UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MUSA HOXHAJ, ABDOU EL SHBEINY, AND
RICARDO CORDERO,                                        Case No. 21-cv-6486 (LJL)

                Plaintiff,

        - against -

MICHAEL CETTA, INC., MICHAEL CETTA,
AND STEVEN CETTA,

                Defendants.
------------------------------------------------------------X

## DECLARATION OF SUSAN EDELSTEIN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 1746, I, Susan Edelstein, hereby declare as follows:

1. I submit this declaration based on my personal knowledge in support of a motion for summary judgment being filed on behalf of the defendants Michael Cetta Inc. ("Sparks"), Michael Cetta, and Steven Cetta (collectively as "Defendants").

1. I have worked with Sparks Steakhouse since 2014 in the capacity of Human Resources Consultant.

2. Sparks is an established New York institution, renowned for its high-end steaks and impeccable service. Founded in 1966, Sparks has remained a family-run business and is currently owned and operated by members of its original founding family, Michael and Steven Cetta.

3. In my capacity as its Human Resources Consultant, I assist with the administrative operations of the restaurant, including dealing with any Human Resources problems. I work directly with Sparks management on a day-to-day basis and have spoken with and counseled Plaintiffs numerous times on appropriate and necessary employee management and disciplinary practices throughout my relationship with the restaurant.

4. Sparks relies on the front of the house managers to supervise and manage the dining area, including waiters, bussers, and other service staff, to ensure high quality service and report any problems relating to pay or harassment in the workplace.

5. I, and Sparks, take all allegations of discrimination with the utmost seriousness, and am bound by Sparks' policies to ensure that all allegations are investigated thoroughly, and to take any appropriate action based on the investigation findings to ensure that all employees have a safe work environment.

6. To ensure a safe work and learning environment, Sparks has clear policies in place to prohibit any harassment, discrimination, or retaliation.  This policy applies to all employees of Sparks. All employees, including Plaintiffs, were provided copies of the policy during meetings and/or at the beginning of their employment. A copy of the policy is attached hereto as Exhibit A.

7. In response to a lawsuit filed against plaintiff Abdou El Shabeiny, Sparks also maintained an anonymous 24-hour hotline (the "Hotline") for employees to report any discrimination complaints from November 2012 to February 2016.  All employees, including Plaintiffs, were given cards with the Hotline's phone number and information to keep in their personal belongings in the event they wanted to report any discrimination. The Hotline information was also posted in areas accessible to the employees.

8. Sparks has no record of receiving a complaint of discrimination from Plaintiffs Hoxhaj or El Shabeiny, including through the Hotline.

9. In March 2020, Sparks, along with most other businesses, was forced to temporarily close in light of the COVID-19 pandemic. Sparks' management, including Steven Cetta, in consultation with me, made the decision to furlough all employees on March 28, 2020. Sparks notified the employees of its decision through a letter, which also detailed its efforts to pay all

employees for two additional pay cycles, pay all health and dental insurance premiums, and offer COBRA health insurance.  A copy of the letter is attached hereto as Exhibit B.

10. At the time it closed its doors, it furloughed its entire workforce. After months with the lights off, Sparks finally reopened in September 2020, but closed again shortly afterwards less than three months later in December 2020. It finally reopened again on a permanent, although significantly understaffed, basis in February 2021.

11. Sparks' decision to furlough Plaintiffs had nothing to do with their ages or religious preferences. Due to the pandemic, the restaurant was forced to furlough all employees. When the restaurant was finally able to reopen, Sparks made great efforts to recall as many employees as possible, but was severely limited in its ability to do so because of the decreased number of diners, state and city mandates that required social distancing and limited that number of people allowed in a restaurant, and various COVID variants that continue to hamper the service industry.

12. Because the pandemic decreased business significantly, Sparks only recalled a small portion of its workforce. Prior to the pandemic, the waitstaff roster was approximately 45 individuals, with five managers overseeing that staff. Upon the restaurant's reopening, it called back just one manager and six servers. Specifically, out of the five managers it previously employed, it recalled Sayed Mohran, who is older than all three Plaintiffs, to serve as the only front of the house manager and the COVID-19 compliance coordinator. To date, Sparks continues to operate at a reduced basis and has not recalled the entirety of its workforce, including Plaintiffs. Sparks currently has 2  managers,  26  waiters, and 3 bartenders.

13. Sparks has a diverse workforce with employees of all religious backgrounds, ethnicities, and ages.

14. Plaintiffs Hoxhaj and El Shbeiny were not the only Muslims there. There are approximately 65 employees at Sparks currently, inclusive of front and back of the house as well as office staff. While Sparks does not keep track of its employees' demographics, there are at least several employees who are practicing Muslims..

15. To reflect its diverse workforce and accommodate employees' religious practices, Sparks allows Muslim employees to use a separate space to pray throughout the workday as customary in their faith. Sparks does not prohibit employees from praying or take any action to interfere with their wish to do so.

16. Plaintiffs Hoxhaj and El Shabeiny were also not the oldest employees there. At the time of their furlough, Hoxhaj was 54 years old and El Shabeiny was 57 years old. Sayed Morhan, who previously worked in the same front of the house manager position as Plaintiffs, was 66 years old. Octavio Perez-Gonzalez, who also previously worked in the same front of the house manager position as Plaintiffs, was 62 years old at the time he was furloughed. Steven Cetta was 56 years old. Michael Cetta was 91 years old.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: January 6, 2023

By: _____
Susan Edelstein

4875-1307-0408.2