UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MUSA HOXHAJ, ABDOU EL SHBEINY, AND
RICARDO CORDERO,                                             Case No. 21-cv-6486 (LJL)

                              Plaintiff,

         -against-

MICHAEL CETTA, INC., MICHAEL CETTA, AND
STEVEN CETTA,

                              Defendants.
-------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Attorneys for Defendants*
77 Water Street, Suite 2100
New York, NY 10005
212-232-1300

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ..................................................................................................3

    BACKGROUND ON DEFENDANTS ..........................................................................3

    PLAINTIFFS' EMPLOYMENT ....................................................................................3

    PLAINTIFFS' DUTIES AS MANAGERS ...................................................................4

    PLAINTIFFS' FURLOUGH ..........................................................................................6

    PLAINTIFFS EL SHABIENY AND HOXHAJ'S DISCRIMINATION CLAIMS...........7

ARGUMENT ......................................................................................................................8

    I.     PLAINTIFFS' CLAIMS UNDER THE FLSA AND NYLL MUST BE
           DISMISSED ........................................................................................................8

          A.     PLAINTIFFS WERE PROPERLY CLASSIFIED AS EXEMPT
                  EMPLOYEES .............................................................................................8

          B.     PLAINTIFFS' CLAIM FOR UNPAID GRATUITIES FAILS. ..............10

    II.    PLAINTIFFS CANNOT RAISE A GENUINE ISSUE OF FACT WITH
           RESPECT TO THEIR DISCRIMINATION CLAIMS .........................................14

          A.     PLAINTIFFS CANNOT PROVE DISCRIMINATORY
                  DISCHARGE..............................................................................................15

               I.     PLAINTIFFS CANNOT SHOW ANIMUS .....................15

               II.    SPARKS HAD A LEGITIMATE REASON FOR
                     TERMINATION................................................................17

               III.   PLAINTIFF CANNOT PROVE PRETEXT ...................18

          B.     PLAINTIFFS' NYCHRL CLAIM FAILS................................................19

CONCLUSION....................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*42nd & 10th Hotel, LLC v. NY Hotel & Motel Trades Council*,
   595 F Supp 3d 4 (S.D.N.Y. 2022) ..........................................................................17

*Arnow v. Aeroflot Russian Airlines*,
   980 F Supp 2d 477 (S.D.N.Y. 2013)........................................................................18

*Barenboim v. Starbucks*,
   21 N.Y.3d 460 (2013) .....................................................................................10, 11, 12

*Cheng Chung Liang v. J.C. Broadway Rest., Inc.*,
   2015 US Dist LEXIS 122878 (SDNY Sep. 15, 2015)..............................................8

*Dachman v. Shalala*,
   9 Fed. Appx. 186 (4th Cir. Apr. 6, 2001)................................................................16

*Downey v. Adloox, Inc.*,
   789 F App'x 903 (2d Cir 2019) ...............................................................................20

*Eder v. City of N.Y.*,
   No. 06 Civ. 13013 (RWS), 2009 U.S. Dist. LEXIS 11501, 2009 WL 362706
   (S.D.N.Y. Feb. 12, 2009).........................................................................................16

*Ellison v. Chartis Claims, Inc.*,
   178 A.D.3d 665, 115 N.Y.S.3d 53 (2d Dep't 2019)...............................................21

*Elmenayer v. ABF Freight Systems, Inc.*,
   318 F.3d 130 (2d Cir. 2003).....................................................................................18

*Encino Motorcars, LLC v. Navarro*,
   __ U.S. __, 138 S. Ct. 1134 (2018).............................................................................9

*Galabya v. New York City Bd. of Educ.*,
   202 F.3d 636 (2d Cir. 2000).....................................................................................19

*Galasso v. Eisman, Zucker, Klein & Ruttenberg*,
   310 F Supp 2d 569 (S.D.N.Y. 2004)........................................................................13

*Gallo v. Prudential Residential Servs.*,
   22 F.3d 1219 (2d Cir. 1994).....................................................................................15

*Grady v. Affiliated Cent.*,
   130 F3d 553 (2d Cir 1997)........................................................................................15

*Klein v. Torrey Point Group, LLC*,
  979 F. Supp. 2d 417 (S.D.N.Y. October 13, 2013)....................................................8

*Kulak v. City of New York*,
  88 F.3d 63 (2d Cir. 1996)...........................................................................................21

*Livingston v Roosevelt Union Free Sch. Dist.*,
  2020 US Dist LEXIS 7921 (E.D.N.Y. Jan. 15, 2020, No. 17-CV-4189
  (JMA)(SIL))..............................................................................................................22

*Mathirampuzha v. Potter*,
  548 F.3d 70 (2d Cir. 2008).........................................................................................19

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)............................................................................................15, 18

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F3d 102 (2d Cir 2013).........................................................................................20

*Pronin v. Raffi Custom Photo Lab., Inc.*,
  383 F. Supp. 2d 628 (S.D.N.Y. 2005).........................................................................21

*Ramos v. Baldor Specialty Foods, Inc.*,
  687 F.3d 554 (2d Cir. 2012).........................................................................................8

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000)............................................................................................15, 18

*Reiseck v. Universal Commc'ns of Miami, Inc.*,
  591 F.3d 101 (2d Cir. 2010).........................................................................................9

*Rozenfeld v. Dep't of Design & Constr. of N.Y.C.*,
  875 F. Supp. 2d 189 (E.D.N.Y. 2012), *aff'd*, 522 F. App'x 46 (2d Cir. 2013).......................20

*Schnabel v. Abramson*,
  232 F.3d 83 (2d Cir. 2000).........................................................................................16

*Scott v. Chipotle Mexican Grill, Inc.*,
  954 F.3d 502 (2d Cir. 2020).........................................................................................9

*Shojae v Harlem Hosp. Ctr.*,
  2020 US Dist LEXIS 65209 (S.D.N.Y. Apr. 13, 2020).........................................................22

*Sosa v. Loc. Staff, LLC*,
  618 F. App'x 19 (2d Cir. 2015)...................................................................................20

*Spiegel v. Schulmann*,
  604 F.3d 72 (2d Cir.2010)...........................................................................................15

*Texas Department of Community Affairs v. Burdine*,
　　450 U.S. 248 (1981) ..........................................................................................18

*Toliver v. Cmty. Action Comm'n*,
　　613 F. Supp. 1070 (S.D.N.Y. 1985), *aff'd*, 800 F.2d 1128 (2d Cir. 1986) ..............16

*Tomassi v. Insignia Fin. Group, Inc.*,
　　478 F3d 111 Cir 2007 ........................................................................................20

*Tucker v. New York City*,
　　No. 05 Civ. 2804 (GEL), 2008 U.S. Dist. LEXIS 76900, 2008 WL 4450271
　　(S.D.N.Y. Sept. 30, 2008) ..................................................................................16

*Weinstock v. Columbia Univ.*,
　　224 F.3d 33 (2d Cir. 2000) ...........................................................................15, 19

*Williams v. N.Y.C. Hous. Auth.*,
　　872 N.Y.S.2d 27 (1st Dep't. 2009) ....................................................................15

*Winans v. Starbucks Corp.*,
　　796 F. Supp. 2d 515 (S.D.N.Y. 2011) ....................................................11, 12, 13

*Wolf v. Time Warner, Inc.*,
　　548 F. Appx. 693 (2d Cir. 2013) ........................................................................19

*Woroski v. Nashua Corp.*,
　　31 F.3d 105 (2d Cir. 1994) ................................................................................18

**Statutes**

29 U.S.C. § 207(a) .......................................................................................................8

City Human Rights Laws..............................................................................................1

Fair Labor Standards Act .............................................................................................1

FLSA ................................................................................................................ *passim*

Labor Law § 650 ........................................................................................................13

New York Labor Law ...................................................................................................1

New York Labor Law § 196-d..........................................................................10, 11, 12

NYLL ............................................................................................................... *passim*

**Other Authorities**

29 C.F.R. Part 541 .......................................................................................................2

29 C.F.R. § 541.200(a)......................................................................................................9

12 NYCRR § 146-3.2 .......................................................................................................13

Local Civil Rules Rule 56.1 ...............................................................................................3

Defendants Michael Cetta, Inc. ("Sparks"), Michael Cetta, and Steven Cetta (collectively as "Defendants"), by their attorneys Lewis Brisbois Bisgaard & Smith LLP, submit this memorandum of law in support of their motion for summary judgment to dismiss Plaintiffs Musa Hoxhaj, Abdou El Shabeiny,[1] and Ricardo Cordero (collectively as "Plaintiffs")' Complaint. As demonstrated below, Plaintiffs cannot raise any genuine issues of triable fact with respect to the claimed violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), or the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL", respectively).

## PRELIMINARY STATEMENT

Plaintiffs' allegations are, frankly, entirely fabricated  and are unsupported by any evidence in the record. Plaintiffs were neither paid improperly nor discriminated against. Instead, they were long-time employees at Sparks, a family-owned and operated restaurant, that were treated favorably throughout their decades-long tenures. They were paid in accordance to federal, state, and city laws, made well above the pay of a typical employee of the hospitality industry,[2] and enjoyed perks such as free meals.

Plaintiffs cannot raise a genuine issue of fact as to either their misclassification claims or Plaintiffs Hoxhaj and El Shabeiny's age and religious discrimination claims. The evidence show that Plaintiffs worked as front-of-the-house managers at Sparks. Plaintiffs were properly classified as exempt under the executive exemption of the FLSA and NYLL because they were compensated on a salary basis, their primary duties were to manage and supervise the waitstaff, and they regularly

---

[1] The Complaint, attached hereto as Exhibit A to the Declaration of Adam E. Collyer in support of Defendants' Motion for Summary Judgment ("Collyer Decl."), incorrectly identifies Plaintiff El Shabeiny as "El Shbeiny."

[2] According to Defendants' wage records, Plaintiff Cordero was paid an annual salary of $83,200 and Plaintiffs El Shbeiny and Hoxhaj were each paid annual salaries of $93,600. Exhibit B to Collyer Decl.

made recommendations as to the hiring and firing of employees. 29 C.F.R. Part 541. As managers, they supervised the waitstaff, determined whether they needed to increase wait staff headcount, reviewed resumes and interviewed applicants, made work schedules, disciplined waiters, assigned tables and private rooms, issued work place policies regarding schedule changes, approved vacation and requests for time off, and were involved in the hiring and termination process for their subordinates. Because they were clearly exempt employees, they were not entitled to any overtime or spread of hours pay. As managers, Plaintiffs were not part of the tip pool, which was reserved solely for non-exempt members of the wait staff such as waiters and thus, they were not entitled to any shared gratuities. As a result, summary judgment should be granted as to Plaintiffs' unpaid wages claims under the FLSA and NYLL.

Similarly, Plaintiffs El Shabeiny and Hoxhaj cannot raise a genuine issue of fact for their age and religious discrimination claims. They cannot show that they were treated less well because of their Muslim faith or age, or that they were not recalled to work after Sparks reopened because of their age. The uncontroverted evidence establishes that Plaintiffs Hoxhaj and El Shabeiny were not the oldest managers there, Michael and Steven Cetta, whom they accuse of discriminating against them on the basis of their age, are as old or older than they are, and Sparks did not replace them with younger workers. Contrary to their claim, the manager who Sparks recalled is older than they are.

Finally, Hoxhaj and El Shabeiny's religious discrimination claim should also be given short shrift. The crux of their religious discrimination allegations is based on a few isolated stray remarks and a single incident where a cook in the kitchen allegedly refused to heat up their food during Ramadan. According to their deposition testimony, though, this incident took place at some indeterminate point in the last 10 years and once they reported the matter to Michael Cetta, the cook in question was suspended immediately for several weeks. Neither Hoxhaj nor El Shabeiny have

shown that the alleged comments were more than petty slights and trivial inconveniences or that they experienced any adverse employment action as a result of the alleged discrimination. They also admit that they never complained about the alleged discrimination. Moreover, to the extent that the discrimination took place, Plaintiff El Shabeiny's own deposition testimony confirms that the alleged events took place outside of the statute of limitations and thus, are not actionable. Plaintiff El Shabeiny and Hoxhaj's age and religious discrimination claim fail and summary judgment should be granted.[3]

## STATEMENT OF FACTS

Defendants respectfully refer to their Statement of Undisputed Facts pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York for a complete recitation of material facts.[4]  The following is a summary.

**Background on Defendants**

Sparks is an established New York institution, renowned for its high-end steaks and impeccable service. Founded in 1966, Sparks has remained a family-run business and is currently owned and operated by members of its original founding family, Michael and Steven Cetta, who are also individually named defendants in this action. SOF, ¶ 1.

**Plaintiffs' Employment**

Plaintiffs were long-time employees at Sparks, all of whom worked for the restaurant for at least 22 years. Plaintiff Cordero started working in August 1998, Plaintiff El Shbeiny in July 1995,

---

[3] On January 6, 2023, Plaintiff Cordero voluntarily withdrew his age discrimination claim against Defendants, (Doc No. 35), which the Court so-ordered on the same day. (Doc No. 36).

[4] Unless otherwise indicated, all references to "Exhibit" are to the exhibits annexed to the Declaration of Adam E. Collyer, dated January 6, 2022, ("Collyer Decl."). Also submitted herewith in support of the motion are  Defendants' Statement of Undisputed Facts (the "SOF") and the declarations of Susan Edelstein (the "Edelstein Decl.") and Sayed Mohran ("Mohran Decl.").

and Plaintiff Hoxhaj in August 1996. SOF, ¶¶ 2, 4, 6.  All three were initially hired as waiters and eventually promoted to managers/supervisors. Plaintiff Cordero was promoted to front of the house manager in 2005, Plaintiff El Shabeiny was promoted to front of the house manager in 1997, and Plaintiff Hoxhaj was promoted to front of the house manager in or about 1997 or 1998. SOF, ¶¶ 3,5,7. In that capacity, Plaintiffs were responsible for overseeing the restaurant operations, including managing and supervising servers and bartenders, as well as maintaining impeccable customer service. SOF, ¶ 18. After their promotions to manager, Plaintiff Cordero was paid a weekly salary of $1,600, Plaintiff El Shabeiny was paid a weekly salary of $1,800, and Plaintiff Hoxhaj was paid a weekly salary of $1,550, which later increased to $1,800, in addition to $250 weekly each to cover job related expenses. SOF, ¶¶ 15-17. Plaintiffs were each given accurate wage notices and accurate wage statements on each payday. SOF, ¶¶ 31, 32.

**Plaintiffs' duties as managers**

At Sparks, a manager's duties include overseeing the day-to-day activities for the "front of the house", which includes managing and supervising the front of the house server staff, creating and managing work schedules, assigning work duties, including table assignments, section assignments, and side jobs, providing orientation and training to new hires, issuing disciplinary write ups, and communicate job expectations and discipline wait staff according to company policies and procedures. SOF, ¶ 18. Managers, including Plaintiffs, were in charge of managing and supervising the waitstaff, which included reviewing resumes, interviewing potential candidates, and making recommendations as to hiring and firing waiters as required by Sparks' business needs. SOF, ¶ 20. Prior to their furlough, Plaintiffs managed a waitstaff of approximately 45 individuals and had the authority to dictate the terms and conditions of their employment, including their work schedule, work duties, requests for time offer, any disciplinary measures, and even whether to hire or fire

certain waiters. SOF, ¶¶ 18-20; Edelstein Decl., ¶ 12.  Managers could review resumes for waiter positions and interview and hire applicants based on the needs of the restaurant. SOF, ¶ 20. Plaintiffs also had the authority to discipline waiters by issuing verbal warnings or written write ups or terminate or request the termination of employees for violating Sparks' policies or for poor performance. SOF, ¶¶ 18, 26. Waiters told Plaintiffs if they were resigning because they were regarded as having authority as managers. SOF, ¶ 28. Employees could complain to managers about any workplace issues, request schedule changes, vacation, and time off. SOF, ¶ 19. Plaintiffs were also expected to supervise waiters and intervene to resolve any issues or complaints from guests. *Id.* If members of the wait staff had issues with their table or if guests complained, Plaintiffs and the other managers were expected to resolve the issue for the guests. SOF, ¶ 24. If members of the wait staff had issues with each other, Plaintiffs and the other managers were expected to intervene and resolve the issues. SOF, ¶ 25.  Plaintiffs had the authority to assign side jobs and different table rotations and private rooms to waiters depending on the needs of the restaurant. SOF, ¶¶ 18, 29. As managers, Plaintiffs were also responsible for verifying the wait staff's time cards and work hours. SOF, ¶ 30. As managers, both Plaintiffs Hoxhaj and El Shabeiny were in charge of making the weekly schedules for the wait staff. SOF, ¶ 22. To ensure adequate staffing, the managers, including Plaintiffs, created a policy that required manager approval for all schedule changes. To enforce this policy, Plaintiff Cordero wrote "no changes will be made without manager approval" on work schedules issued to the wait staff. Plaintiffs expected waiters to ask them for approval for all schedule changes. Waiters also had to notify Plaintiffs if they were late for their shifts. SOF, ¶ 23; Exhibit J of Collyer Decl. Plaintiffs were exempt managers and were not included in the tip pool. SOF, ¶ 21.

**Plaintiffs' Furlough**

At the time of the furlough, Sparks employed approximately five total front of the house managers, including Plaintiffs. Edelstein Decl., ¶ 12 Those five managers worked on a schedule that they themselves set to ensure consistent coverage based on the needs of the restaurant, starting each day at 3:30 p.m. for dinner service or 10:30 am for lunch service. Hours varied based on time of year and day of the week. For example, from approximately September to December when the restaurant is at its busiest, managers can expect to work approximately nine hours a day, six days a week. During less busy times, managers and other employees worked fewer hours.

In March 2020, Sparks, along with most other businesses, was forced to temporarily close in light of the COVID-19 pandemic. Sparks furloughed all employees on March 28, 2020. Sparks notified the employees of its decision through a letter, which also detailed its efforts to pay all employees for two additional pay cycles, pay all health and dental insurance premiums, and offer COBRA health insurance. SOF, ¶ 33. After months of being closed, Sparks finally reopened in September 2020, but closed down again shortly afterwards less than three months later in December 2020. It finally reopened again on a permanent basis in February 2021. SOF, ¶ 34.

Because the pandemic decreased business significantly, Sparks only recalled a small portion of its workforce. Edelstein Decl., ¶ 12. Prior to the pandemic, the waitstaff roster was approximately 45 individuals, with five managers overseeing that staff. *Id.* Upon the restaurant's reopening, it called back just one manager and six servers. *Id.*. Specifically, it recalled Sayed Mohran, who is older than all three Plaintiffs, to serve as the only front of the house manager and the COVID-19 compliance coordinator. SOF, ¶ 36.

**Plaintiffs El Shabieny and Hoxhaj's Discrimination Claims**

Sparks has a diverse workforce with employees of all religious backgrounds, ethnicities, and ages. SOF, ¶ 38. Plaintiffs Hoxhaj and El Shbeiny were not the only Muslims there. According to Plaintiff Hoxhaj, from 2015 to his furlough, there were at least six to eight Muslim employees. SOF, ¶ 39. To reflect its diverse workforce and accommodate employees' religious practices, Sparks allows Muslim employees to use a separate space to pray throughout the workday as customary in their faith. Sparks does not prohibit employees from praying or take any action to interfere with their wish to do so. SOF, ¶ 15. Plaintiffs Hoxhaj and El Shabeiny were also not the oldest employees there. At the time of their furlough, Hoxhaj was 54 years old and El Shabeiny was 57 years old. SOF, ¶ 47.  The other managers were either older or around the same age as Plaintiffs Hoxhaj and El Shabeniy. Sayed Mohran, who previously worked in the same front of the house manager position as Plaintiffs, was 66 years old. He is nine years older than Plaintiffs El Shabeiny and twelve years older than Plaintiff Hoxhaj. SOF, ¶ 48. Octavio Perez-Gonzalez, who also previously worked in the same front of the house manager position as Plaintiffs and who was the first manager recalled by Sparks but was unable to return due to personal reasons, was 62 years old at the time he was furloughed. SOF, ¶ 49.  Steven Cetta was 56 years old and Michael Cetta was 91 years old. SOF, ¶ 49.

On July 30, 2021, Plaintiffs filed this action, asserting claims under the FLSA, NYLL, NYSHRL, and NYCHRL. Ex. A to Collyer Decl.  On January 6, 2023, Plaintiff Cordero voluntarily dismissed his age discrimination claims against Defendants. (Doc. Nos. 35 and 36). Defendants now move for summary judgment to dismiss the balance of Plaintiffs' claims.

## ARGUMENT

## I.   PLAINTIFFS' CLAIMS UNDER THE FLSA AND NYLL MUST BE DISMISSED

Plaintiffs allege that Defendants improperly classified them as exempt employees and failed to pay them overtime, spread of hours, and gratuities under the FLSA and NYLL. Plaintiffs also allege that Defendants failed to provide accurate wage notice and wages statements on each payday under the NYLL. Plaintiffs' claims under the FLSA and NYLL fail as a matter of law as they were managers who were clearly exempt under the executive exemption, were not part of any tip pool and were not entitled to any gratuities, and Defendants provided Plaintiff with wage notices and wage statements as required under the law.

### A. Plaintiffs Were Properly Classified As Exempt Employees

The FLSA provides a private right of action to recover damages for violations of the law's overtime provisions, which "mandates that employers pay time-and-a-half per hour when employees work more than 40 hours per week." *Klein v. Torrey Point Group, LLC*, 979 F. Supp. 2d 417, 425 (S.D.N.Y. October 13, 2013). That mandate, however, "is subject to several exemptions," including one for administrative and executive employees." *Id.*; 29 U.S.C. § 207(a). An employee is exempt  as "executive" if "1) they are '[c]ompensated on a salary basis'; 2) their primary duty is management of the enterprise … or of a customarily recognized department or subdivision thereof'; 3) they 'customarily and regularly direct[ ] the work of two or more other employees'; and 4) they 'ha[ve] the authority to hire or fire other employees' or if their 'suggestions and recommendations' on personnel decisions 'are given particular weight.'" *Cheng Chung Liang v. J.C. Broadway Rest., Inc.*, 2015 U.S. Dist. LEXIS 122878, at *4-5 (SDNY Sep. 15, 2015) (quoting 29 C.F.R. § 541.100(a)(1)-(4)); *see Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 559-60 (2d Cir. 2012).

To satisfy the administrative exemption, the $684 per week remains constant, but the employee's primary duty must be the performance of office or non-manual work directly related to the management of general business operations of the employer and must include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510-11 (2d Cir. 2020). Critically, these exemptions are to be given a "fair reading," rather than be narrowly construed. *Encino Motorcars, LLC v. Navarro*, __ U.S. __ , __, 138 S. Ct. 1134, 1142 (2018). The NYLL incorporates the FLSA's exemptions, including the administrative and executive exemptions, by reference. *See Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010).

The evidence establishes Plaintiff was correctly classified as exempt. First, Plaintiffs Hoxhaj and El Shabeiny were paid $1,800 each week and Plaintiff Cordero was paid $1,600 each week, well in excess of the established salary minimum. SOF, ¶¶ 15-17. Further, they had full supervisory authority over the entire front of the house staff and could discipline employees as necessary. While they did on occasion assist the wait staff by serving food or clearing tables when service was busy and the staff fell behind, this was not their primary duty. Instead, and in accordance with their job description, *see* Exhibit I to Collyer Decl., their primary duties were geared towards supervising and directing staff to ensure smooth restaurant operations and impeccable customer service. Specifically, they had the authority to review resumes, interview applicants, and hire staff. SOF, ¶ 20. Employees had to notify Plaintiffs when they were going to be late or unable to make their shifts. SOF, ¶ 23. Plaintiffs were also responsible for making the waiters' work schedules, assigning tables and private rooms, and making sure that the waiters completed their required side jobs. SOF, ¶¶ 18 - 22. Plaintiffs also had authority to discipline employees and issue verbal and written warnings. SOF, ¶ 26. With respect to matters of significance and the demonstration of discretion

and independent judgment, Plaintiffs prepared employee schedules, created policies to ensure compliance with the work schedule, assigned side jobs to comply with the 80/20 rule, supervised servers and resolved various service issues, managed private parties, and approved comped drinks and food for tables at their servers' request, among other responsibilities. To ensure that the restaurant had adequate staffing at all times, Plaintiffs created a policy that required all waiters to obtain managerial approval of all requested schedule changes. SOF, ¶ 23. Plaintiffs' duties also required them to intercede and resolve any issues with guests and they had the authority and independent discretion to "comp" meals or drinks as necessary. SOF, ¶¶ 24-25.

That Plaintiffs now seek to paint themselves as nothing more than members of the wait staff is a complete rewriting of history. Accordingly, Defendants should be granted summary judgment as to the misclassification claims under the FLSA and NYLL.

**B. Plaintiffs' Claim for Unpaid Gratuities Fails.**

Plaintiffs also assert that they did not receive tips paid for the services they allegedly provided and, thus, Defendants are in violation of New York Labor Law § 196-d.

As an initial matter, there is no question that Plaintiffs were "agents" of Sparks within the meaning of NYLL § 196-d. "There comes a point at which the degree of managerial responsibility becomes so substantial that the individual can no longer fairly be characterized as an employee similar to general wait staff within the meaning of Labor Law § 196-d." *Barenboim v. Starbucks*, 21 N.Y.3d 460, 473 (2013). According to the Court of Appeals, "the line should be drawn at meaningful or significant authority over subordinates." *Id.* That authority of control includes "the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation."

*Id.* Here, the evidence shows that Plaintiffs had meaningful and significant authority of the wait staff and exercised supervisory responsibilities, including hiring and firing employees, disciplining employees, creating and managing work schedules, approving requests for time off, and managing staff assignments to tables and private events. SOF, ¶¶ 18-25. The evidence adduced in discovery also establishes that Plaintiffs scheduled both themselves and the staff, set the side jobs schedule, ran staff meetings, and supervised all dining room operations. *Id.*

Plaintiffs cannot credibly dispute they had "meaningful or significant authority or control" over the wait staff. In fact, unsurprisingly they do not - Plaintiff Cordero repeatedly testified that they had "control" over the servers. Cordero Tr., 59:5 – 59:11; 125:7-125:15. Additionally, Plaintiffs were considered "management" by the union, are not part of the bargaining unit comprised of tipped employees, and were required to wear tuxedos to differentiate themselves from the wait staff. who wore a different uniform. Cordero Tr., 66:5 – 66:15.

Even assuming that Plaintiffs are somehow not considered Sparks "agents," they still cannot recover allegedly unpaid tips. Tips from tables serviced by the wait staff are pooled and divided among the servers. SOF, ¶ 21. In order for Plaintiffs to have received tip distributions, they must have been part of the designated tip pool. Front of the house managers, however, are not part of the tip pool. *Id.* They would not have been members of the tip pool even if their duties and responsibilities somehow would have made them eligible to join, as Labor Law § 196-d "merely defines who is eligible or ineligible to join in a tip pool and does not grant an otherwise eligible employee an affirmative right to participate in tip pools or receive tip distributions." *Barenboim v. Starbucks*, 21 N.Y.3d 460, 473 (2013).

The situation here is akin to that in *Winans v. Starbucks Corp.*, 796 F. Supp. 2d 515 (S.D.N.Y. 2011). In *Winans*, the plaintiffs were a class of employees designated as "assistant store

managers" ("ASM") at Starbucks locations. The *Winans* plaintiffs alleged that ASMs "spent almost all of their work time serving and interacting with customers" and were "customer service employees" who were "indistinguishable from Baristas or Shift Supervisors," two positions that shared in the tip pool. *Id.* ASMs, however, did not, even though they alleged they "did not have the power to hire or fire other employees or to take any substantial employment actions with respect to other employees." *Id.* Nevertheless, the *Winans* plaintiffs alleged that Starbucks "did not allow [them] to retain the customer tips they earned" and "unilaterally decided to redistribute customer tips." *Id.* The Court in *Winans* granted summary judgment to Starbucks. Specifically, although the Court made no determination as to ASMs statutory eligibility to participate in tip pooling, the Court held that the *Winans* plaintiffs' claims failed as a matter of law because the fact that a class of employees may be "eligible to participate in a tip pool does not mean that he or she is entitled to do so." *Winans*, 796 F. Supp. 2d at 519. By virtue of the fact that "Starbucks never retained the gratuities in question for itself but rather allowed tip-eligible customer service employees – and only tip-eligible employees – to share in the tip proceeds," the Court found that Starbucks had not violated the prohibitions imposed by § 196-d. *Id.* Notably, this result has been affirmed. The *Winans* plaintiffs appealed to the Second Circuit, who then certified the eligibility question for a statutory interpretation to the New York Court of Appeals. In *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, the Court of Appeals held that Labor Law § 196-d "excludes certain people from an employer-mandated tip pool but does not require the inclusion of all employees not statutorily barred from participation." *Id.* at 474.

Virtually the same scenario exists in this case. Here, Plaintiffs were designated as front of the house managers, an exempt position, and imbued with supervisory responsibility, as set forth above. Importantly, Plaintiffs were paid on a salary basis. Sparks did not take any tip credit and Plaintiffs

were well aware they were not working in a tipped capacity. That Plaintiffs allege they were engaging in direct customer service is entirely irrelevant to their inclusion in a tip pool. Customer tips were collected, pooled, and distributed to servers, and Sparks, like Starbucks, "never retained the gratuities in question." *Winans*, 796 F. Supp. 2d at 520. The Court should dismiss Plaintiffs' unpaid gratuities claim.

## C. Plaintiffs' Claims for Unpaid Spread of Hours and Wage Notice and Wage Statement Violations Also Fail.

Plaintiffs also allege that Defendants failed to pay them spread of hours premium and provide accurate wage notices and wage statements in violation of the NYLL. Plaintiffs' claims fail as a matter of law because they are not entitled to spread of hours premium as exempt employees. The Hospitality Wage Order clearly excludes all exempt employees from its requirements. Section 146-3.2, which requires payment of spread of hours premium for hospitality workers, specifically states that "Employee also does not include any individual permitted to work in, or as an executive, administrative or professional capacity." 12 NYCRR § 146-3.2; *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F Supp 2d 569, 575 (S.D.N.Y. 2004) (dismissing plaintiff's claim for spread of hours pay as "deficient as a matter of law because § 650 of the Labor Law and the regulations thereunder were not enacted for the benefit [of] professionals, who are exempt from its provisions."). Thus, Plaintiffs are not entitled to any spread of hours premium and their claim should be dismissed.

Similarly, Plaintiffs' claim for inaccurate wage notices and wage statements also fails. Plaintiffs allege that their wage notices and wage statements contained incorrect information in violation of the NYLL, because they were improperly classified. However, as discussed herein, Plaintiffs were properly classified as exempt employees. Thus, the wage notices and wage statements that they received accurately recorded Plaintiffs' pay and there were no wage notice or

wage statement violations. *See* Exhibits C, D, E to Collyer Decl.  Summary judgment should also be granted as to Plaintiffs' wage notice and wage statement claims.

## II.    PLAINTIFFS CANNOT RAISE A GENUINE ISSUE OF FACT WITH RESPECT TO THEIR DISCRIMINATION CLAIMS

Plaintiffs El Shabeiny and Hoxhaj also allege that Defendants discriminated against them on the basis of their age and religion. They claim that they were terminated and then not recalled from furlough due to their age. They also claim that they were subjected to various comments relating to their Muslim faith. They also allege that a cook in the kitchen refused to heat up their food during Ramadan.

The evidence shows that Plaintiffs' discrimination claims are unsubstantiated. With respect to their age discrimination claim, Plaintiffs were not the oldest managers and Sparks currently employs a manager who is older than both Plaintiffs El Shabeiny and Hoxhaj. This is fatal to Plaintiffs' age discrimination claim. With respect to the religious discrimination claim, Plaintiffs have not offered a scintilla of evidence to show that the alleged remarks took place or that they were treated less well than employees who were not Muslim. Moreover, based on their own deposition testimony, Plaintiffs admit that the alleged discriminatory acts took place outside of the statute of limitations and thus, are not actionable. The Court should dismiss Plaintiffs' discrimination claim in its entirety.

Even assuming *arguendo* that Plaintiffs could prove a prima facie case of discriminatory discharge, under the controlling burden-shifting test, they cannot overcome Defendants' showing that Sparks had a legitimate, non-discriminatory basis for the furlough and they cannot prove that this reason was false or that the real motivation for the decision was discriminatory animus. *See generally Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143 (2000); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

## A. Plaintiffs Cannot Prove Discriminatory Discharge

To prove discriminatory discharge, Plaintiffs must show: (1) that they are in the protected group; (2) that they were discharged; (3) that they qualified for the positions held; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Under the NYCHRL, Plaintiffs have to prove that, based on their age or religion, they treated less favorably than persons not in their protected class. *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 35 (1st Dep't. 2009). The *McDonnell Douglas* burden shifting test applies to NYCHRL claims at the summary judgment stage. *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir.2010). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973).

### i. Plaintiffs Cannot Show Animus

Plaintiffs cannot raise a genuine issue of fact as to discriminatory animus by Defendants. With respect to their religious discrimination claim, it is undisputed that Plaintiffs both worked for Defendants for at least 23 years each and that their employment was not terminated until Sparks was forced to shut down at the beginning of the COVID pandemic along with the rest of the service industry. SOF, ¶¶ 4-7, 33. Plaintiff Hoxhaj also testified that prior to his furlough, he regularly vacationed with Steven Cetta to Montreal and Brazil. Hoxhaj Tr., 23:7 – 23:15. Under the circumstances, Plaintiffs cannot possibly prove that Michael and Steven Cetta, the same individuals who hired them and employed them for more than 23 years, and in Hoxhaj's case, vacationed with him, suddenly developed an animus towards Muslim individuals. *Grady v. Affiliated Cent.*, 130 F3d 553, 560 (2d Cir 1997) ("when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."); *see also Dachman v. Shalala*, 9 Fed. Appx. 186, 189 (4th

Cir. Apr. 6, 2001) (because plaintiff initially had collegial relations with supervisors, who knew of her membership in a protected class, the later deterioration in those relations could not have been based on her membership in that class). Had Defendants really harbored an animus towards Plaintiffs because of their religion, Defendants would not have waited 23 years to terminate their employment.

Similarly, Plaintiffs cannot show that Michael and Steven Cetta suddenly developed an animus towards them because of their age. Both Michael and Steven Cetta belong to the same protected group as Plaintiffs. Steven Cetta is the same age as El Shabeiny and two years *older* than Hoxhaj. SOF, ¶¶ 10 - 12. At the time of the furlough, Michael Cetta was 91 years old and almost four decades *older* than both Plaintiffs. SOF, ¶ 13. Plaintiffs cannot establish that Michael and Steven Cetta discriminated against them because of their age where the alleged bad actors are actually older than they are. *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (noting relevance of the fact that plaintiff was a member of protected class when the alleged discriminator hired her); *Eder v. City of N.Y.*, No. 06 Civ. 13013 (RWS), 2009 U.S. Dist. LEXIS 11501, 2009 WL 362706, at *8 (S.D.N.Y. Feb. 12, 2009) (holding that "any inference of discrimination, without additional evidence, is not warranted" where plaintiff and his immediate supervisor who assessed plaintiff's performance and determined that it was lacking  are members of the same protected class); *Tucker v. New York City*, No. 05 Civ. 2804 (GEL), 2008 U.S. Dist. LEXIS 76900, 2008 WL 4450271, at *5 (S.D.N.Y. Sept. 30, 2008) ("[A]ny inference of race discrimination is further undermined by the fact that all three superintendents under whom [plaintiff] worked as well as three of his four direct supervisors . . . were also African-American."); *Toliver v. Cmty. Action Comm'n*, 613 F. Supp. 1070, 1074 (S.D.N.Y. 1985), *aff'd*, 800 F.2d 1128 (2d Cir. 1986) (where decision-maker is in the same protected class as plaintiff, claims of discrimination are less plausible).

Moreover, Plaintiffs El Shabeiny and Hoxhaj were not the oldest managers at Sparks and Defendants actually furloughed and recalled two other managers who are older than Plaintiffs. As previously stated, Defendants were forced to furlough all employees due to COVID in March 2020. SOF, ¶ __. Once the restaurant was able to reopen, Defendants first recalled Octavio Perez-Gonzalez, who is actually five years older than Plaintiff El Shabeiny and eight years older than Plaintiff Hoxhaj. SOF, ¶ 49. When he was unable to continue working, Sparks recalled Sayed Mohran, who remains employed. SOF, ¶ 36. Mr. Mohran is nine years older than Plaintiff El Shabeiny and twelve years older than Plaintiff Hoxhaj. SOF, ¶ 48.

Plaintiffs have not offered any evidence to support their claim that Sparks hired younger workers to replace them. The evidence clearly shows the opposite, which undercuts Plaintiffs' claim. Defendants recalled two managers, both of whom were *older* than Plaintiffs and the individuals who Plaintiffs allege discriminated against them, Michael and Steven Cetta, are as old or even older than they are. This is fatal to Plaintiffs' age discrimination claim and the Court should grant summary judgment in its entirety.

### ii.   Sparks Had a Legitimate Reason for Termination

Sparks has identified the legitimate, non-discriminatory reason for Plaintiffs' termination; *viz,* it had to furlough all employees and shut down the restaurant at the beginning of the pandemic. *See 42nd & 10th Hotel, LLC v. NY Hotel & Motel Trades Council*, 595 F Supp 3d 4, 8 (S.D.N.Y. 2022) (noting that "the COVID-19 pandemic began in earnest" in March 2020). Defendants had to furlough all employees due to the pandemic and once the restaurant reopened, it could not recall all employees because of the significantly decreased number of customers as well as state and city mandates that required social distancing and limited the number of patrons allowed in one area. Edelstein Decl,, ¶ 11. Financial concerns and cost-cutting measures are a legitimate, non-

discriminatory business reason for terminating employees. *Arnow v. Aeroflot Russian Airlines*, 980 F

Supp 2d 477, 485 (S.D.N.Y. 2013) (dismissing plaintiff's national origin discrimination allegation

on summary judgment based on her termination where she was laid off along with all other members

of her department in a cost-cutting measure by the company).

Assuming *arguendo* that Plaintiffs succeeded in establishing a *prima facie* case of

discrimination, the burden of production shifts to Defendants to rebut that presumption by merely

"articulat[ing] a legitimate, nondiscriminatory reason" for discharging them. *Texas Department of*

*Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Defendants have done so. *See* Edelstein

Decl, Decl. ¶¶ 10 - 12.

### iii.    Plaintiff Cannot Prove Pretext

Under the *McDonnell Douglas* framework, because Defendants have squarely met their

burden to articulate the legitimate reason for discharging Plaintiffs, a heavy burden falls to them to

prove that the stated reason was a pretext for discrimination. *See generally, Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-110 (2d

Cir. 1994) ("Some evidence is not sufficient to withstand a properly supported motion for summary

judgment . . ."). Plaintiffs cannot meet their burden. There is no evidence whatsoever that age was

the real reason Sparks terminated Plaintiffs and declined to recall them or that the proffered

legitimate grounds are false.

While legitimate "evidence of disparate treatment might have tended to prove pretext,"

Plaintiffs cannot muster any such evidence as to any proper comparator as the managers who were

recalled, were both *older* than Plaintiffs. *Elmenayer v. ABF Freight Systems, Inc.*, 318 F.3d 130, 135

(2d Cir. 2003) (affirming dismissal of disparate treatment claim based on*, inter alia,* failure to show

pretext). Since Plaintiffs have no evidence that gives rise to a genuine fact issue, their discrimination

claim should be dismissed.

### B. Plaintiffs' NYCHRL Claim Fails

The same result applies as to Plaintiffs' NYCHRL claims. Plaintiffs cannot offer any evidence to show that they were treated "less well" based on their age or religion. Plaintiffs admit that they were not terminated or demoted and did not suffer any change in pay or work duties or any adverse employment action based on their religion or age. SOF, ¶¶ 41-42. To the extent Plaintiffs allege that they were subjected to disparate treatment based on their age or religion, they cannot raise an issue of fact because they cannot show adverse employment action, which is "a materially adverse change in the terms and conditions of employment," based on their membership in a protected class. *Mathirampuzha v. Potter,* 548 F.3d 70, 78 (2d Cir. 2008). *See generally Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000), *cert. denied,* 540 U.S. 811 (2003); *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Plaintiffs have not proffered any evidence to show that other employees who are not Muslim were treated differently or that younger employees were not furloughed. Plaintiffs cannot raise a fact question as they have no evidence that discriminatory animus played any role in the decision to furlough them or to not recall them. *Wolf v. Time Warner, Inc.,* 548 F. Appx. 693, 696 (2d Cir. 2013) (affirming summary judgment).

Nor can Plaintiffs show that they were subjected to a hostile work environmentalleged remarks rise above the level of petty slights and trivial inconveniences. Plaintiffs allege that Defendants told them they had nowhere to go and that "their next stop was 'the old age home'" and made remarks  such as "Arab stink" and "Islam is bad." Complaint, ¶¶ 37, 38, 44, 50. At worst, the alleged comments should be considered stray remarks that did not change the terms and conditions of Plaintiffs' employment. "Stray remarks even when made by decisionmakers, do not make out a discrimination case." *Downey v. Adloox, Inc.*, 789 F App'x 903, 906 (2d Cir 2019) (dismissing

supervisor's comments of "old timer" and wanting to hire "young sharks" as stray remarks). Courts have also found that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Id.* Here, Plaintiffs have not offered any evidence to show any connection between the alleged comments and their furlough. They cannot prove that the comments were made in temporal proximity of their furlough nor can they show that the comments revealed any animus to motivate the furlough. Moreover, Plaintiffs actually allege that Sebastian called them "Arab Stink." Complaint, ¶ 50. Sebastian, however, was not their supervisor and did not have any part in the decision to furlough them as he had not been employed by Sparks for at least 15 years by that time.. Court have dismissed "remarks made by someone other than the person who made the decision adversely affecting the plaintiff " as having "little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." *Tomassi v. Insignia Fin. Group, Inc.*, 478 F3d 111, 115 2d Cir 2007).

Assuming *arguendo* that Plaintiffs can show that the comments were not stray remarks, they do not rise above petty slights and trivial inconveniences to be actionable. It is well established that the   NYCHRL and NYSHRL NYCHRL are not "general civility code[s]." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F3d 102, 110 (2d Cir 2013). Courts have long dismissed similar remarks as petty slights and not evidence of discrimination. *See Sosa v. Loc. Staff, LLC*, 618 F. App'x 19, 20 (2d Cir. 2015) (affirming district court's decision that employer telling a Latino employee "You're so street" is "nothing more than what a reasonable victim of discrimination would consider [a] petty slight[] and trivial inconvenience[]"); *Rozenfeld v. Dep't of Design & Constr. of N.Y.C.*, 875 F. Supp. 2d 189, 209 (E.D.N.Y. 2012) (acknowledging "lack of tact and inappropriateness of calling Plaintiff part of a 'mental retard case'" but still finding it to be "nothing

more than, at most, [a] petty slight[] or trivial inconvenience[]" for purposes of NYCHRL hostile

work environment claim (citation omitted)), *aff'd*, 522 F. App'x 46 (2d Cir. 2013); *Pronin v. Raffi*

*Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 638 (S.D.N.Y. 2005) (finding that the comment,

"Maybe you are too old to be working here," which was made six to eight weeks before Plaintiff was

fired, was a non-probative stray remark); *Ellison v. Chartis Claims, Inc.*, 178 A.D.3d 665, 669, 115

N.Y.S.3d 53 (2d Dep't 2019) (affirming lower court's grant of summary judgment and finding an

isolated instance of calling a co-worker a "bitcher" "constituted no more than [a] petty slight[] or

trivial inconvenience[]"). The Court should dismiss Plaintiff's claim on this basis alone.

     Given the factual record, any determination by a jury that ageist or religious bias was

responsible for the furlough decision would be conjectural at best. Because such conjecture and

speculation cannot create a genuine issue of fact, dismissal is warranted. *Kulak v. City of New York*,

88 F.3d 63, 71 (2d Cir. 1996).

     Plaintiffs also allege that Defendants discriminated against them on the basis of their age and

religion by allowing other employees to treat them differently. Specifically, Plaintiffs allege that one

of the cooks discriminated against them by refusing to heat up food for them. Complaint, ¶ 42.

Plaintiffs, however, also admit that when they reported the cook's behavior, Defendants promptly

took corrective action and suspended the cook. *See* Hoxhaj Tr., 100:3 – 102:19. Plaintiffs also allege

that Sebastian, another employee, discriminated against them by insulting them about their age and

religion. Complaint, ¶¶ 49 – 50. Plaintiffs have not offered any evidence other than their own self-

serving testimony to prove that the alleged discrimination took place. Assuming *arguendo* that the

allegations were true, Plaintiffs' own deposition testimony confirm that the alleged events took place

well outside of the statute of limitations. When asked when the incident with the cook took place,

Plaintiff El Shabeiny testified that it took place at least four to five years ago when Sayed Mohran

was a server. Sayed Morhan was first hired as a server in 1983 and worked in that capacity intermittently until 2017 when he became a manager. SOF, ¶ 45. Thus, even when crediting Plaintiffs' testimony, the latest the alleged incident could have taken place was in 2017, which is outside of the three year statute of limitations under the NYSHRL and NYCHRL, and thus, not actionable.[5] Similarly, Defendants' records show that Sebastian was last employed at Sparks in or around 2005. SOF, ¶ 46. To the extent the comments took place, they are well outside of the statute of limitations and are no longer actionable. Plaintiffs' discrimination claim fails and the Court should dismiss it in its entirety.

## <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that the Court grant Defendants' motion and dismiss this action with prejudice. In the alternative, the Court should dismiss the federal claims under the FLSA and decline to extend supplemental jurisdiction over the remaining claims under the NYLL, NYSHRL and NYCHRL.

Dated:   New York, New York
         January 6, 2023

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: /s/ Adam E. Collyer
        Adam E. Collyer
        Dong Phuong V. Nguyen
        *Attorneys for Defendants*
        77 Water Street, Suite 2100
        New York, NY 10005

---

[5] The Complaint was filed on July 30, 2021. Exhibit A to Collyer Decl. The statute of limitations under both the NYSHRL and NYCHRL runs for three years from the date that the claim accrued. (*Shojae v Harlem Hosp. Ctr.*, 2020 US Dist LEXIS 65209, at *6 (S.D.N.Y. Apr. 13, 2020); *Livingston v Roosevelt Union Free Sch. Dist.*, 2020 US Dist LEXIS 7921, at *12 (E.D.N.Y. Jan. 15, 2020, No. 17-CV-4189 (JMA)(SIL)). Thus, based on the filing date of the Complaint, the statute of limitations extends back to July 30, 2018 only.

212-232-1300
Adam.Collyer@lewisbrisbois.com
Phuong.Nguyen@lewisbrisbois.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the within Memorandum of Law upon the attorney for plaintiff and filed same via ECF on January 6, 2023.


                                  /s/ Adam E. Collyer
                                   Adam E. Collyer