UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MUSA HOXHAJ, ABDOU EL SHBEINY, AND
RICARDO CORDERO,　　　　　　　　　　　　　　Case No. 21-cv-6486 (LJL)

　　　　　　　　　　Plaintiffs,

　　　- against -　　　　　　　　　　　　**DEFENDANTS' LOCAL RULE 56.1
　　　　　　　　　　　　　　　　　　　　　　STATEMENT OF UNDISPUTED
MICHAEL CETTA, INC., MICHAEL CETTA,　　FACTS**
AND STEVEN CETTA,

　　　　　　　　　　Defendants.
-----------------------------------------------------------X

　　　Defendants Michael Cetta, Inc. ("Sparks"), Michael Cetta, and Steven Cetta (collectively as "Defendants"), by and through their attorneys, Lewis Brisbois Bisgaard & Smith LLP, submit, pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, that the following material facts are undisputed:

　　　1.　　Sparks is an established New York institution, renowned for its high-end steaks and impeccable service. Founded in 1966, Sparks has remained a family-run business and is currently owned and operated by members of its original founding family, Michael and Steven Cetta. Declaration of Susan Edelstein in Support of Motion for Summary Judgment ("Edelstein Decl."), ¶ 2.

　　　2.　　Plaintiff Ricardo Cordero ("Cordero") was hired as a waiter at Sparks Steakhouse in 1998. Deposition Transcript of Plaintiff Ricardo Cordero ("Cordero Tr."), Exhibit F of Declaration of Adam E. Collyer in support of Motion for Summary Judgment ("Collyer Decl.")[1], 27:23 – 28:2.

---

[1] All exhibits referenced herein are attached to the Declaration of Adam E. Collyer ("Collyer Decl."), dated January 6, 2023.

3. Plaintiff Cordero was promoted to front of the house manager in 2005. Cordero Tr., 48:25 – 49:3.

4. Plaintiff Abdou El Shabeiny ("El Shabeiny") was hired as a waiter at Sparks Steakhouse in 1995. Deposition Transcript of Plaintiff Abdou El Shabeiny ("El Shabeiny Tr."), Exhibit G of Collyer Decl., 27:23 – 28:2.

5. Plaintiff El Shabeiny was promoted to front of the house manager in 1997. El Shabeiny Tr. 34:14 – 34:25.

6. Plaintiff Musa Hoxhaj ("Hoxhaj") was hired as a waiter at Sparks Steakhouse in March 1988. Deposition Transcript of Plaintiff Musa Hoxhaj ("Musa Hoxhaj Tr."), Exhibit H of Collyer Decl., 21:19 – 21:23.

7. Plaintiff Hoxhaj was promoted to front of the house manager in or about 1997 or 1998. Hoxhaj Tr. 25:3 – 25:6.

8. Plaintiffs Cordero, El Shabeiny, and Hoxhaj all worked as front of the house managers and had similar work duties. El Shabeiny Tr., 23:3 – 23:15; Hoxhaj Tr. 14:21 – 15:5; Cordero Tr., 14:20 – 15:5, 48:13 – 48:24.

9. At the time of his furlough on March 28, 2020, Plaintiff Cordero was 64 years old. Cordero Tr. 28:9 – 28:10; 38:10 – 38:11.

10. At the time of his furlough on March 28, 2020, Plaintiff El Shabeiny was 56 years old. El Shabeiny Tr. 43:3 – 43:7.

11. At the time of his furlough on March 28, 2020, Plaintiff Hoxhaj was 54 years old. Hoxhaj Tr. 96:12 – 96:18.

12. Plaintiff El Shabeiny is the same age as Steven Cetta, whom he alleges discriminated against him on the basis of his age. El Shabeiny Tr. 34:4 -34:5; 43:8 – 43:11.

13. At the time of the furlough, Michael Cetta was 91 years old. Edelstein Decl., ¶ 16.

14. Plaintiffs El Shabeiny and Hoxhaj self-identify as Muslim. Exhibit A to Collyer Decl. ("Complaint"), ¶ 40.

15. After his promotion to manager, Plaintiff Cordero was paid a weekly salary of $1,600 in addition to $250 to cover job related expenses. Sparks did not take a tip or meal credit against his pay. Cordero Tr., 78:9 – 80:19; Exhibit C to Collyer Decl.

16. After his promotion to manager, Plaintiff El Shabeiny was paid a weekly salary of $1,800 in addition to $250 to cover job related expenses. Sparks did not take a tip or meal credit against his pay. Hoxhaj Tr., 72:21 – 74:10, 80:22 – 81:2; Exhibit E to Collyer Decl.

17. After his promotion to manager, Plaintiff Hoxhaj was paid a weekly salary of $1,550, which later increased to $1,800 in addition to $250 to cover job related expenses. Sparks did not take a tip or meal credit against his pay. Hoxhaj Tr., 56:12 – 56:15, 58:3 – 59:25; Exhibit D to Collyer Decl.

18. At Sparks, a manager's duties include overseeing the day-to-day activities for the "front of the house", which includes managing and supervising employees, creating and managing work schedules, assigning work duties, including table assignments, section assignments, and side jobs, providing orientation to new hires, issuing disciplinary write ups, and communicate job expectations and discipline wait staff according to company policies and procedures. Deposition Transcript of Sayed Mohran ("Mohran Tr."), 21:4 – 22:15, 89:3 – 90:10; Exhibit I to Collyer Decl.; Cordero Tr. 86:22 - 86:24; 87:15 – 87:19.

19. Employees could complain to managers about any workplace issues, request schedule changes, vacation, and time off. Managers were also expected to supervise waiters and intervene to resolve any issues or complaints from guests. Mohran Tr., 32:20 – 33:11.

20. Managers could also review resumes for waiter positions and interview and hire applicants based on the needs of the restaurant. Mohran Tr., 47:15 – 48:16; 49:2 – 49:15; 52:14 - 52:21; 56:19 – 57:16, 61:21 – 62:15; Cordero Tr., 106:18 – 106:21; 107:22 – 108:7.

21. Managers were not included in the tip pool and were not involved in dividing tips amongst waiters. Members of the wait staff divided tips amongst themselves. Mohran Tr., 24:10 – 25: 12, 26:6 – 26:22; Cordero Tr., 92:14- 92:16.

22. As managers, both Plaintiffs Hoxhaj and El Shabeiny were in charge of making the weekly schedules for the wait staff. Mohran Tr., 74:4 – 74:18; Cordero Tr. 29:25 – 30:6, 87:5 – 87:10; 120:21 – 120:24; Deposition Transcript of Steven Cetta ("Cetta Tr."), 62:20 – 62:22; El Shabeiny Tr. 93:4 – 93:6.

23. To ensure adequate staffing, the managers, including Plaintiffs, created a policy that required manager approval for all schedule changes. To enforce this policy, Plaintiff Cordero wrote "no changes will be made without manager approval" on work schedules issued to the wait staff. Plaintiffs expected waiters to ask them for approval for all schedule changes. Waiters also had to notify Plaintiffs if they were late for their shifts. Cordero Tr. 44:13 – 44:16, 89:15 – 90:17; 99:4 – 99:8; 101:12 -101:17; Cetta Tr. 69:16 – 70:5; Hoxhaj Tr. 72:15 – 74:17; Exhibit J of Collyer Decl.

24. If members of the wait staff had issues with their table or if guests complained, Plaintiffs and the other managers were expected to resolve the issue for the guests. Cordero Tr., 46:22 – 47:6; El Shabeiny Tr. 90:23 – 91:3.

25. If members of the wait staff had issues with each other, Plaintiffs and the other managers were expected to intervene and resolve the issues. Cordero Tr., 64:16 – 64:19.

26. As managers, Plaintiffs also had the authority to discipline waiters by issuing verbal warnings or written write ups. Cordero Tr., 63:22-64:3; 101:8 – 101:11.

27. Plaintiffs had the authority to terminate and request the termination of employees for violating Sparks' policies or for poor performance. Cordero Tr., 101:18 – 101:21; 105:2 – 23.

28. Waiters told Plaintiffs if they were resigning because they were regarded as having authority as managers. Cordero Tr., 102:14 – 103:4; 103:15 – 104:21.

29. Plaintiffs had the authority to assign side jobs and different table rotations and private rooms to waiters depending on the needs of the restaurant. Cordero Tr., 126:11 – 126:18; El Shabeiny Tr. 93:11 – 93:13.

30. As managers, Plaintiffs were also responsible for verifying the wait staff's time cards and work hours. Cordero Tr., 97:11 – 98:9.

31. Plaintiffs were each given accurate wage notices. Exhibits C, D, and E to Collyer Decl.

32. Plaintiffs each received accurate wage statements on each payday. Exhibits C, D, and E to Collyer Decl.

33. In March 2020, Sparks, along with most other businesses, was forced to temporarily close in light of the COVID-19 pandemic. Sparks furloughed all employees on March 28, 2020. Sparks notified the employees of its decision through a letter, which also detailed its efforts to pay all employees for two additional pay cycles, pay all health and dental insurance premiums, and offer COBRA health insurance. Exhibit K to Collyer Decl., Edelstein Decl., ¶ 9; El Shabeiny Tr., 47:15 – 48:14; Hoxhaj Tr. 39:7 – 39:12; 40:7 – 41:13.

34. After months of being closed, Sparks finally reopened in September 2020, but closed down again shortly afterwards less than three months later in December 2020. It finally reopened again on a permanent basis in February 2021. Edelstein Decl., ¶ 10.

35. The COVID pandemic significantly impacted the service industry, reducing the number of diners. After Sparks reopened, business slowed and the number of customers it received on an average night decreased to about a third of the number of customers it had before the pandemic. Mohran Tr., 40:12 – 42:10.

36. Because the pandemic decreased business significantly, Sparks only recalled a small portion of its workforce. Prior to the pandemic, the waitstaff roster was approximately 45 individuals, with five managers overseeing that staff. Upon the restaurant's reopening, it called back just one manager and six servers. Specifically, out of the five managers it previously employed, it recalled Sayed Mohran to serve as the only front of the house manager and the COVID-19 compliance coordinator. Edelstein Decl., ¶ 12.

37. To date, Sparks continues to operate at a reduced basis and has not recalled the entirety of its workforce. Sparks currently has 2 managers and 26 waiters. Edelstein Decl., ¶ 12; Mohran Tr., 39:18 – 40:11.

38. Sparks has a diverse workforce with employees of all religious backgrounds, ethnicities, and ages. Edelstein Decl., ¶ 13.

39. Plaintiffs Hoxhaj and El Shbeiny were not the only Muslims there. From 2015 to his furlough, Plaintiff Hoxhaj estimated that there were at least six to eight Muslim employees. Hoxhaj Tr. 120:21-120:24; 121:21 – 121:23.

40. To reflect its diverse workforce and accommodate employees' religious practices, Sparks allows Muslim employees to use a separate space to pray throughout the workday as customary in their faith. Sparks does not prohibit employees from praying or take any action to interfere with their wish to do so. Edelstein Decl., ¶ 15.

41. Plaintiff El Shabeiny testified he was not terminated, demoted, suffer any change in pay or work duties, and did not face any adverse employment action because of his Muslim faith. El Shabeiny Tr. 129:19 – 130:3; 131:12 – 131:18.

42. Plaintiff Hoxhaj testified he was not terminated, demoted, suffer any change in pay or work duties, and did not face any adverse employment action because of his Muslim faith. Hoxhaj Tr. 112:11 – 112:16; 114:5 – 115:16.

43. Plaintiff El Shabeiny testified he did not complain about any religious discrimination. El Shabeiny Tr. 136:23 – 137:16.

44. Ernesto, the chef at Sparks who Plaintiffs El Shabeiny and Hoxhaj alleged discriminated against them by refusing to warm up their meals, is not a manager or supervisor, and did not have any supervisory authority over Plaintiffs. Hoxhaj Tr. 101:17 – 102:12; El Shabeiny Tr., 134:2 – 135:11.

45. Plaintiff El Shabeiny admits that Ernesto's alleged refusal to heat up food took place at least four to five years ago when Sayed Mohran was a server. Sayed Morhan was first hired as a server in 1983 and worked in that capacity intermittently until 2017 when he became a manager. El Shabeiny Tr., 135:15 – 136:17; Mohran Tr., 11:11 - 17:3.

46. Sebastian, who Plaintiffs El Shabeiny and Hoxhaj allege insulted them about their age and religions, did not have any supervisory authority over Plaintiffs. He was a temporary employee at Sparks and last worked at the restaurant in or about 2005. Cetta Tr., 31:19 – 32:8, 34:11 – 35:5; Mohran Tr., 45:21 - 47:14.

47. Plaintiffs Hoxhaj and El Shabeiny were also not the oldest employees there. At the time of their furlough, Hoxhaj was 54 years old and El Shabeiny was 57 years old. The other managers were either older or around the same age as Plaintiffs Hoxhaj and El Shabeniy. El

Shabeiny Tr. 43:3 – 43:7, 115:4 – 115:6, 116:20 – 117:9; 117:20 – 117:25; Hoxhaj Tr. 96:12 – 96:18.

48. Sayed Mohran, who previously worked in the same front of the house manager position as Plaintiffs, was 66 years old. He is nine years older than Plaintiffs El Shabeiny and twelve years older than Plaintiff Hoxhaj. Mohran Tr., 9:8-9:10; El Shabeiny Tr. 43:3 – 43:7, 115:4 – 115:6; Hoxhaj Tr. 96:12 – 96:18.

49. Octavio Perez-Gonzalez, who also previously worked in the same front of the house manager position as Plaintiffs, was 62 years old at the time he was furloughed. Steven Cetta was 56 years old. Michael Cetta was 91 years old. Edelstein Decl., ¶ 16.

50. Plaintiff El Shabeiny testified he never complained about age discrimination. El Shabeiny Tr. 127:14 – 127:19.

51. Plaintiff Hoxhaj testified he never complained about age discrimination. Hoxhaj Tr. 112:11 – 112:16; 114:5 – 115:16.

Dated: New York, New York
January 6, 2023

          LEWIS BRISBOIS BISGAARD & SMITH LLP

          /s/ Adam E. Collyer
          Adam E. Collyer, Esq.
          Dong Phuong V. Nguyen, Esq.
          77 Water Street, Suite 2100
          New York, New York 10005
          (212) 232-1300
          Adam.Collyer@lewisbrisbois.com
          Phuong.Nguyen@lewisbrisbois.com
          *Attorneys for Defendants*